# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

    v.

ARTURO HERNANDEZ,
            *Defendant-Appellant.*

No. 04-50286

D.C. No.
CR-03-03501-MJL

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
June 10, 2005—Pasadena, California

Filed September 14, 2005

Before: Betty B. Fletcher, Pamela Ann Rymer, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge B. Fletcher

**COUNSEL**

Lori B. Schoenberg, Assistant Federal Public Defender, San Diego, California, for the appellant.

Mark R. Rehe, Assistant United States Attorney, San Diego, California, with Patrick K. O'Toole, Assistant United States Attorney, San Diego, California, on the brief for the appellee.

**OPINION**

B. FLETCHER, Circuit Judge:

Appellant Arturo Hernandez appeals from his conditional-plea conviction for importation of marijuana in violation of 18 U.S.C. §§ 952 and 960. Hernandez contends that border agents conducted an unreasonable search of his vehicle when the agents dismantled the interior panels of the doors of the vehicle, revealing packages of marijuana. Hernandez moved to suppress evidence of the marijuana, contending that the search was unreasonably destructive, and that because the search was unsupported by probable cause, the search violated the Fourth Amendment. We conclude that the initial search of the vehicle, which involved merely pulling back the interior panels of the doors on the vehicle in such a manner that they could be replaced without damage, was not especially destructive or otherwise carried out in an offensive manner. We therefore affirm the conviction.

I.

On December 11, 2003, Arturo Hernandez drove a 1991 Buick Skylark to the Calexico East Port of Entry, along with

a passenger, Jorge Rangel. After some routine questioning, Hernandez and Rangel were referred to secondary. A narcotics-sniffing canine alerted to the inside of the vehicle. Using a screwdriver, the customs inspector then "pulled the panel" from the inside of the driver's side door, revealing "packages" inside the door. According to Senior Inspector Giancarlo Picciao, the panel was removed in "an easy way, [so] that if we [don't] find anything [we] can put it back together without damage. Very gently." When asked, "What kind of force was used in removing the panel, initially?" Picciao responded, "Initially, just the way that we do no damage to the vehicle." It was then that the inspector saw the packages containing what he believed to be marijuana. Once removed, the substance in the packages tested positive for marijuana. Hernandez was placed under arrest, and a more complete search of the interior door panels and the rest of the vehicle was conducted, during which more packages of marijuana were discovered. In all, more than eight kilograms of marijuana were recovered from the car.

Hernandez moved to suppress evidence resulting from the search of the vehicle, arguing that the search was "non-routine" because a certain amount of force was necessary to remove the door panels, thereby inevitably damaging them, and that non-routine searches at the border must be supported by reasonable suspicion.[1] Without conducting an evidentiary hearing on the matter, the district court found that the search and amount of destruction were "routine" and therefore reason-

---

[1]Hernandez argued that because the government had failed to provide information regarding the reliability of the detector dog, the government should not be allowed to rely on evidence of the dog's alert on his vehicle. He further argued that without the alert, there was no reasonable suspicion justifying the search, and the evidence seized should be suppressed. The government stated that it would not be relying on the canine sniff to establish reasonable suspicion. Because the district court found the search to be "routine," it did not make a finding as to reasonable suspicion, and did not rely on the detector dog evidence. On appeal, we entertain the fiction that the search was carried out in the absence of any suspicion.

able.[2] In rendering its decision, the court applied three factors from existing Ninth Circuit precedent: the amount of force used, the dangerousness, and the psychological intrusiveness of the search. *See United States v. Molina-Tarazon*, 279 F.3d 709 (9th Cir. 2002), *overruled by United States v. Flores-Montano*, 541 U.S. 149 (2004).

After the government proffered the testimony of Senior Inspector Picciao,[3] defense counsel began to cross-examine him regarding the tools and force necessary to remove a door panel. The government objected, citing the court's prior ruling that the search and the amount of damage were "routine." The district court initially sustained the objection, but when defense counsel explained that "[The government] attempted to elicit testimony [from the agent] that there was no damage to the vehicle. So that is the reason why I was moving to question about that," the court responded, "You can follow up on that a little bit." Inexplicably, however, defense counsel moved to a different topic.

The district court ultimately denied the motion to suppress. Hernandez then entered a conditional guilty plea to one count of marijuana importation. He now appeals.

## II.

This court reviews de novo the district court's ruling on a motion for suppression of evidence. *United States v. Sandoval*, 390 F.3d 1077, 1080 (9th Cir. 2004). Factual determinations underlying the district court's ruling are reviewed for

---

[2]As we explain, this routine/non-routine analytical framework has been denounced by the Supreme Court insofar as searches of property are concerned. *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004).

[3]Although an evidentiary hearing was not held for the purpose of determining the use of force and whether the search was "routine" or "non-routine," one was held on a related issue, during which Inspector Picciao testified regarding the door panel search.

clear error. *Id.* The decision whether to hold an evidentiary hearing on a motion to suppress is reviewed for an abuse of discretion. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).

**[1]** After the district court denied the motion to suppress in this case, the Supreme Court issued its opinion in *United States v. Flores-Montano*, 541 U.S. 149 (2004), holding that the disassembly and reassembly of a vehicle's gas tank at the border did not require a reasonable suspicion to believe the gas tank contained contraband. *Id.* at 155. The Court first concluded that "[c]omplex balancing tests to determine what is a 'routine' search of a vehicle, as opposed to a more 'intrusive' search of a person, have no place in border searches of vehicles." *Id.* at 152. The Court went on to conclude that a vehicle's driver has no expectation of privacy in the contents of the vehicle's gas tank, then noted that the "procedure of removal, disassembly, and reassembly of the fuel tank . . . has [not] resulted in serious damage to, or destruction of, the property." *Id.* at 154. Nevertheless, the Court specifically allowed that "it may be true that some searches of property are so destructive as to require a different result." *Id.* at 155-56. The Court also "[left] open the question 'whether, and under what circumstances, a border search might be deemed 'unreasonable' because of the particularly offensive manner in which it is carried out.' " *Id.* at 154 n.2 (quoting *United States v. Ramsey*, 431 U.S. 606, 618, n. 13 (1977)).

**[2]** We have since relied on *Flores-Montano* to permit the suspicionless slashing of a vehicle's spare tire at the border. *United States v. Cortez-Rocha*, 394 F.3d 1115 (9th Cir. 2005), *petition for cert. filed*, (U.S. May 25, 2005) (No. 04-10392). Reiterating the Supreme Court's analysis, we declared that destruction of a spare tire was not "so destructive as to require a different result," though we declined to define what type of search might be considered unreasonably destructive. *Id.* at 1125. In reaching our conclusion, we considered both the damage to the vehicle, especially that which affects its opera-

tion, and any potential effect on vehicle safety or the security of the driver and passengers. *Id.* at 1119-1120. Specifically, we reasoned that "[a]lthough cutting a spare tire is certainly damaging to that tire, the important factor is whether the procedure results in significant damage to, or destruction of, the vehicle," focusing on the "operation of the vehicle." *Id.* at 1119-1120 (internal citation and quotation omitted). We also concluded that "disabling of a spare tire [does not] undermine the immediate safety of the vehicle or threaten the security of the vehicle's driver or passengers." *Id.* at 1120.

We have likewise upheld a suspicionless border search in which officers used a radioactive density meter called a "Buster" to search the inside of a spare tire.[4] *United States v. Camacho*, 368 F.3d 1182 (9th Cir. 2004). In that case we concluded that because the Buster caused no damage to property, and because there was no evidence of potential harm to motorists, no reasonable suspicion was required to perform a Buster search. *Id.* at 1185-86. We distinguished prior precedent requiring a heightened level of suspicion for x-ray searches of the person because such searches are "potentially harmful to the health of the suspect." *Id.* (citing *United States v. Ek*, 676 F.3d 379, 382 (9th Cir. 1982)).

**[3]** In the present case, the record reflects that the initial search — which involved removal of the interior door panels in "an easy way, [so] that if we [don't] find anything [we] can put it back together without damage. Very gently" — caused no significant damage to, or destruction of, the vehicle. Nor

---

[4]In another post-*Flores-Montano* case, we noted that while "most border searches involving vehicles do not require any articulable level of suspicion[.] . . . [e]specially destructive searches of property [ ] may require reasonable suspicion." *United States v. Bennett*, 363 F.3d 947, 951 (9th Cir.) (internal citation omitted), *cert. denied*, 125 S. Ct. 363 (2004). Because the searching officers in that case had ample suspicion under any standard to conduct the search, which involved exploratory drilling into interior compartments of a boat, we did not reach the issue of whether suspicionless drilling would have been permissible. *Id.*

did it undermine the safety of the vehicle, or present any potentially harmful effects to the health of the motorist. In comparison to the complete destruction of a spare tire, the damage involved through the removal of the door panel in this case was minimal. In short, the gentle removal of the door panel was not "so destructive as to require a different result."[5] *Flores-Montano*, 541 U.S. at 156; *Cortez-Rocha*, 394 F.3d at 1125. Neither can it be said that the search was conducted in a particularly offensive manner. *Flores-Montano*, 541 U.S. at 154, n.2. Therefore, reasonable suspicion was not required prior to conducting the search.

**[4]** We also conclude that the district court did not abuse its discretion in refusing to grant an evidentiary hearing as to the amount of force to conduct the initial search. *See United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Indeed, defense counsel eventually was afforded the opportunity to cross-examine the inspecting agent on the amount of force used during the search, but declined to pursue that line of questioning. We see no abuse of discretion where the relief sought is offered but not accepted.

### III.

In sum, we conclude that careful removal of the interior door panels of Hernandez's vehicle was not a destructive search that required reasonable suspicion prior to conducting the search. Nor did the district court abuse its discretion in refusing to conduct an evidentiary hearing on the matter.

AFFIRMED.

---

[5]Once the initial package of marijuana was found, of course, the officers had ample suspicion to justify the further removal of, and damage to, the door panels, glove box and other components of the vehicle, in an effort to locate additional stashes of marijuana.