**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

RICHARD ERNEST MARKS,
          *Defendant-Appellant.*

No. 05-30218

D.C. No.
CR-02-00423-002-
JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted
October 16, 2007—Seattle, Washington

Filed June 13, 2008

Before: Betty B. Fletcher, C. Arlen Beam,* and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge B. Fletcher

---

*The Honorable C. Arlen Beam, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

**COUNSEL**

William C. Broberg (argued), Seattle, Washington, for the defendant-appellant.

Alan Hechtkopf, Gregory V. Davis (argued), Tax Division, Department of Justice, Washington, D.C., Jeffrey C. Sullivan (of counsel), United States Attorney, Seattle, Washington, for the plaintiff-appellee.

**OPINION**

B. FLETCHER, Circuit Judge:

Defendant Richard Marks ("Marks") was convicted of numerous offenses arising from his involvement in Ander-

son's Ark and Associates ("AAA"), an organization that created, promoted, and implemented schemes to assist U.S. taxpayers in the evasion of their income tax liabilities and that also defrauded its own clients. Marks was sentenced to serve a prison term and to pay restitution.

Marks appeals his conviction and sentence on several grounds: that the district court denied him a fair trial because it was biased against him and the other *pro se* defendants; that the court erred in failing to address Marks' jurisdictional challenges; that the court's restitution order is invalid because it was not entered until after the ninety-day statutory period set forth in 18 U.S.C. § 3664(d)(5); that the court's *ex parte* entry of the restitution order violated Marks' right to be present at a critical stage of the proceeding and his right to allocute; that the court erred in failing to *sua sponte* examine Marks' competence to stand trial; and that the court erred in allowing Marks to proceed to trial *pro se*.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**I.**

In December 2002, the government indicted Marks and nine other defendants in the Western District of Washington. The government filed a superseding indictment in December 2003 and a second superseding indictment in August 2004. The second superseding indictment charged the defendants with various counts of conspiracy, aiding and assisting in the preparation and filing of false tax returns, mail fraud, wire fraud, international money laundering, and conspiracy to commit money laundering.

In October 2003, at Marks' first arraignment, the district court appointed counsel to represent Marks. Soon thereafter Marks filed a motion to proceed *pro se* and his appointed counsel likewise filed a motion to allow Marks to proceed *pro*

*se* with standby counsel. At a hearing on the motions, Marks stated that while he wanted "effective assistance of counsel," he did not wish to be represented by someone whose "primary obligation" was to the court. Marks also stated that he was not requesting standby counsel. The court denied both motions.

In March 2004, the district court held a hearing on appointed counsel's motion to withdraw. Marks repeated that he wished to have "effective assistance of counsel," but told the court that he found his attorney "not qualified in the law to be counsel" and stated that he "would rather go *pro se* than have the Court appoint an attorney." The court granted the motion to withdraw but appointed new counsel to represent Marks.

Marks' new counsel subsequently filed a motion to withdraw on the grounds that Marks had twice refused to meet with him, had informed him that he did not wish to be represented by him, and had signed a statement that he wanted to represent himself so he could speak and argue for himself. At a hearing on the motion, Marks' counsel repeated that Marks wished to act as his own attorney and informed the court that Marks had already acted as his own attorney by "filing numerous pleadings on his own." Marks complained that both appointed counsel were "incompetent" and stated that he wanted to represent himself.

The court subsequently held a hearing, pursuant to *Faretta v. California*, 422 U.S. 806 (1975), on Marks' request to proceed *pro se*. After explaining to Marks the dangers and disadvantages of representing himself, the court asked Marks whether he still wished to represent himself and waive his right to counsel. Marks responded: "Oh, I think no matter what I can represent myself better than anybody you've provided me. It's entirely voluntary." The court granted counsel's motion to withdraw and allowed Marks to proceed *pro se*.

Throughout the proceedings, Marks filed several pretrial motions in which he moved to dismiss the case against him

for lack of subject matter and personal jurisdiction. The court denied the motions without a hearing.

During a 37-day jury trial, in which Marks and two of the other ten defendants proceeded *pro se*, the government presented evidence about AAA and Marks' role in it. AAA was founded in 1996 by Keith Anderson and was administered and controlled by Keith and Wayne Anderson. Marks was AAA's lead accountant, supervising nine other AAA-affiliated accountants. AAA was essentially an offshore trust program, based in Costa Rica, that sold "membership" to wealthy individuals as a mechanism to move untaxed funds belonging to those individuals offshore to Costa Rican bank accounts. The bank accounts were set up to create the appearance that these AAA clients neither owned nor controlled the funds, whereas in fact they did own and control them. AAA helped its clients repatriate the funds in various ways, giving them access to the untaxed funds for personal use.

The government also presented evidence that while AAA purported to provide investment, tax, and financial services to thousands of clients, it functioned primarily to enrich the defendants and their co-conspirators. For example, AAA defrauded its own clients through a Ponzi scheme in which AAA promised substantial tax-free investment returns on funds deposited with AAA. In reality, however, AAA never invested those funds, and clients who believed they were making withdrawals from their individual investment accounts with AAA were in fact withdrawing funds deposited by other AAA clients.

The jury found Marks guilty of one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, one count of conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 371, twenty-three counts of aiding and assisting in the preparation and filing of false income tax returns in violation of 26 U.S.C. § 7206(2), ten counts of mail

fraud in violation of 18 U.S.C. § 1341, and nine counts of wire fraud in violation of 18 U.S.C. § 1343.

On April 22, 2005, the district court sentenced Marks to fifteen years imprisonment followed by three years of supervised release, and imposed a $25,000 fine and a $4,400 penalty assessment. During the sentencing hearing, the government stated that it was seeking restitution in the amount of $42,311,742 as to all defendants. However, the government indicated that the restitution amount could become less because some of the government's letters mailed to victims of AAA's fraud were being returned "address unknown." Accordingly, the government requested an additional ninety days before the court would enter a final order of restitution. The court granted the government's request but indicated both at the hearing and on Marks' judgment and commitment order that the final restitution amount could be as much as $42,311,742.

On September 26, 2005, Marks received a copy of the government's proposed amended judgment order showing a restitution amount of $30,738,395.28, with $23,942,282.28 due the IRS and $6,796,113 due 145 defrauded AAA clients. On October 14, 2005, Marks filed a written objection to the proposed amended judgment order, in which he argued, among other things, that the government had failed to provide evidence supporting the calculation of the restitution amount. On October 20, 2005, well beyond ninety days after entry of judgment, the district court signed and filed an amended judgment in which it ordered Marks to pay restitution in the amount proposed by the government.[1] The court did not hold a hearing before filing the amended judgment.

Marks timely appealed.

---

[1]Marks and three co-defendants were held jointly and severally liable for the restitution amount of $30,738,395.28. Keith and Wayne Anderson were held jointly and severally liable for $45,794,980.05 in restitution.

## II.

## A.

Marks argues that the district court violated his right to a fair trial and due process by treating him and the *pro se* defendants collectively in a manner that was biased or created the appearance of being biased.

### 1.  *Applicable Standards*

**[1]** " 'A fair trial in a fair tribunal is a basic requirement of due process.' " *Tracey v. Palmateer*, 341 F.3d 1037, 1048 (9th Cir. 2003) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). A judge's conduct justifies a new trial if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality. *See United States v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001); *United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999). However, "[a] federal judge has broad discretion in supervising trials, and his or her behavior during trial justifies reversal only if [he or she] abuses that discretion." *United States v. Laurins*, 857 F.2d 529, 537 (9th Cir. 1988) (citations omitted).

The Supreme Court has recognized that certain courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial. *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 651 (2006). "[T]he Constitution prohibits any courtroom arrangement or procedure that 'undermines the presumption of innocence and the related fairness of the fact-finding process.' " *United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007) (en banc), *adopting in part United States v. Larson*, 460 F.3d 1200, 1214 (9th Cir. 2006) (quoting *Deck v. Missouri*, 544 U.S. 622, 630 (2005)). "The presumption is so undermined when the practice creates 'an unacceptable risk . . . of impermissible factors coming into play.' " *Larson*, 460 F.3d at 1214 (quoting *Estelle v. Williams*, 425 U.S. 501, 505 (1976)).

*2. Analysis*

Marks bases his argument on what he contends are six occurrences in which the district court exhibited bias against him or against the *pro se* defendants collectively.

**[2]** First, Marks points to the fact that in the courtroom the *pro se* defendants were seated at a table behind the table at which the represented defendants and their attorneys were seated, which Marks contends indicated to the jury that the *pro se* defendants were "second rate, and literally second-tier defendants in the eyes of the court." However, Marks does not contend, and the record does not support, that the district court, rather than the parties themselves, decided on that seating arrangement. Nor did Marks object to the seating arrangement during trial.

In any event, even if the district court did impose the seating arrangement, it did not violate Marks' constitutional rights. In *Larson*, we surveyed the case law addressing courtroom arrangements and observed that "our core concern in this area is to avoid any procedure that undermines the presumption of innocence by conveying a message to the jury that the defendant is guilty." *Larson*, 460 F.3d at 1215. We went on to hold that the district court did not violate the two defendants' constitutional rights when it denied a request that the court seat them at the counsel table and instead seated them directly behind their two attorneys. *Id.* at 1213, 1215-16. We found that the jury most likely drew no impermissible inference from the arrangement and "may have just as easily inferred that the arrangement simply ameliorated overcrowding at the counsel table, or that it facilitated a more orderly and decorous courtroom." *Id.* at 1215. Accordingly, we concluded that the arrangement "in no way conveyed a message of [the defendants'] guilt and it therefore cannot be considered either 'inherently prejudicial' or prejudicial in this particular case." *Id.* (quoting *Holbrook v. Flynn*, 475 U.S. 560, 569 (1986)).

**[3]** We reach the same conclusion here. The trial involved ten defendants and seven defense attorneys, so it was likely impossible to seat all parties at the same counsel table. Having the represented defendants and their attorneys sit at the front table made sense given the likelihood that an attorney, rather than an unrepresented defendant, would make more evidentiary objections at trial. Accordingly, we are confident that the seating arrangement was simply taken for granted by the jury and we conclude that it was not prejudicial to Marks.

**[4]** Second and third, Marks points to the fact that the district court cut short his opening statement to the jury and temporarily halted his cross-examination of a government witness. However, the record demonstrates that the court's actions were justified by Marks' incessant discussion of (often frivolous) legal issues that were not for the jury to decide and by his combative interactions with the court.

Shortly after commencing his opening statement, Marks began to address such issues as whether the court had jurisdiction over him, whether it was lawful for an undercover agent to record conversations without the consent of all parties, whether the IRS had legal authority to execute search warrants or was a sham entity, whether the government's "police officer authority" is supported by statute, and whether the United States has jurisdiction over a house that one owns. In response, the court sustained repeated objections by the government and by several of Marks' co-defendants. The court also instructed Marks on several occasions that he should tell the jury only about evidence he intended to elicit at trial, that the information Marks was citing was not admissible into evidence, and that the issues he was raising were not for the jury to decide. Nonetheless, Marks continued to address legal issues in his opening statement and signaled through his argumentative demeanor towards the court that he had no intention of stopping. Finally, after sustaining objections ten times, the court told Marks to "take a seat" and thus ended his opening statement.

The court also temporarily halted Marks' cross-examination of a government witness, IRS Agent Dowling, because Marks, again, sought to make legal arguments to the jury. It is apparent from the record that the purpose of Marks' cross-examination was to demonstrate to the jury that the IRS had no legal authority under the laws of the United States and that, accordingly, Agent Dowling had no authority to investigate criminal matters in California. The court sustained the government's repeated objections on the ground that Marks' questions were irrelevant. When Marks nonetheless continued to ask questions pertaining to the authority of the IRS and Agent Dowling, the court informed Marks that his cross-examination was finished.

However, the next day, when Marks sought guidance from the court about the appropriate bounds of his participation in the trial, the court explained to Marks that he had impermissibly questioned Agent Dowling about issues that were not for the jury to decide and that on cross-examination he instead should ask fact-based questions, such as whether a conversation had taken place or whether something had been discussed in a particular conversation. The court subsequently permitted Marks to resume his cross-examination of Agent Dowling.

District courts have broad power to ensure that a trial proceeds in a proper manner. As the Supreme Court explained in *Geders v. United States*,

> The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. To this end, he may determine generally the order in which parties will adduce proof; his determination will be reviewed only for abuse of discretion. Within limits, the judge may control the scope of rebuttal testimony; may refuse to allow cumulative, repetitive, or irrelevant testimony; and may control the scope of examination of

witnesses. If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings.

425 U.S. 80, 86-87 (1976) (citations omitted). Accordingly, "[t]he standard for reversing a verdict because of general judicial misconduct during trial is rather stringent . . . . We must determine whether the district court's inquiry rendered the trial unfair." *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 709 (9th Cir. 1990) (citations omitted).

**[5]** In ending Marks' opening statement and temporarily halting his cross-examination of Agent Dowling, the district court acted within its discretion to ensure that Marks would abide by the rules of evidence and rules of procedure, would not expose the jury to constant irrelevant argumentation, and would follow the directions of the court. At the same time, the district court prudently excused the jury from the courtroom before reproving Marks about his conduct—which included an "outburst" when the court halted Marks' cross-examination of Agent Dowling—and patiently explained to Marks the appropriate bounds of his participation when Marks approached the court for guidance. Accordingly, we are persuaded that the district court's actions neither showed actual bias nor created the appearance of bias. *See Parker*, 241 F.3d at 1119 (holding that court did not show actual bias or create the appearance of bias despite intervening at numerous points during the trial by asking questions on behalf of the government when the prosecutor asked leading or otherwise objectionable questions); *Cox v. Treadway*, 75 F.3d 230, 237 (6th Cir. 1996) (holding that court did not abuse discretion by interrupting opening statement three times to admonish counsel about arguing her case and by cutting opening statement short without prior notice); *United States v. Mostella*, 802 F.2d 358 (9th Cir. 1986) (holding that defendant received fair trial despite court's interruption of defense counsel's examination and extensive questioning of witness); *cf. United States v. Carreon*, 572 F.2d 683 (9th Cir. 1978) (holding that court

deprived defendant of fair trial where it repeatedly interrupted defense counsel's opening statement and closing argument although objections had not been made by prosecutor; made and sustained its own objections to several of defense counsel's questions; and treated defense counsel in a manner that demonstrated its low opinion of the defense).

**[6]** Fourth, Marks points to the fact that the district court instructed the jury that statements of facts made by *pro se* defendants in their opening statements or in questions during the examination of witnesses are not evidence. Marks does not dispute that the instruction was a correct statement of law but contends that it "singled out" and "deprecated" the *pro se* defendants.

The court gave the instruction immediately after one of Marks' *pro se* co-defendants made an unsworn statement of fact during his cross-examination of Agent Dowling by attesting to his own belief that a certain amount of money he had received had come from a lawful source. After sustaining an objection to the co-defendant's statement, the court instructed the jury as follows:

> This might be an appropriate point to advise the jury that in the opening statements of the *pro se* defendants — that is the defendants that are representing themselves — any questions they ask they might make statements of fact.
>
> The only fact that is in evidence is the facts that come from the witness stand. Statements of fact in opening statements or in questions by the *pro se* defendants are not evidence. Questions being asked during the course of the case either by attorneys or by the *pro se* defendants are not evidence.
>
> The evidence is what you hear from the witness stand and the exhibits that are admitted into evidence or any stipulations that may be entered into.

**[7]** Even assuming that the court's instruction "singled out" the *pro se* defendants,[2] the court acted within its discretion in giving it. The instruction was appropriate in light of Marks' and the co-defendant's conduct during opening statements and cross-examination, and it neither exhibited actual bias nor created the appearance of bias towards the *pro se* defendants.

**[8]** Fifth, Marks points to the fact that the court declined to hold a hearing on his repeated motions to dismiss the case against him for lack of jurisdiction. However, as discussed below, the court was not required to hold a hearing because Marks' motions were frivolous. While the court, in explaining to Marks that he could not raise jurisdictional issues in his cross-examination of Agent Dowling, stated that it would eventually listen to Marks' jurisdictional arguments, we are not convinced that the court's failure to ultimately hold a hearing reflected bias against Marks. Instead, we assume that the court simply recognized the frivolousness of Marks' jurisdictional arguments and concluded that a hearing was, after all, not necessary to properly rule on Marks' motions.

**[9]** Finally, Marks points to the fact that the district court declined to submit his proposed jury instructions to the jury.[3] However, to the extent that Marks' proposed instructions were correct statements of law, their substance was contained in the court's own instructions. A court need not use the precise language of jury instructions proposed by the defendant in order for its instructions to be adequate. *See United States v. Bussell*, 414 F.3d 1048, 1058 (9th Cir. 2005) (holding that court did not abuse discretion because although court's jury

---

[2]We note that the district court's instruction did not exclusively address statements by *pro se* defendants but also informed the jury that questions asked by attorneys are not evidence.

[3]Marks also contends that the district court "refused to even look at [his] proposed instructions." However, the record reveals only that the court declined Marks' request that it expressly identify each of his proposed instructions.

instructions differed from defendant's proposed instructions in their precise formulation, they adequately presented her defense). With respect to Marks' proposed instructions pertaining to his arguments that the court lacked jurisdiction and the government lacked authority to try him for the alleged offenses, the court was not required to give those instructions to the jury because they were not relevant to the issues that the jury would decide. *See United States v. Foppe*, 993 F.2d 1444, 1452 (9th Cir. 1993) (holding that court's failure to give defendant's proposed jury instruction did not prejudice defendant because he was not entitled to an irrelevant jury instruction). Accordingly, the district court's decision not to read all of Marks' proposed instructions to the jury was proper and does not demonstrate bias.

**[10]** In sum, the district court did not abuse its discretion in supervising the trial in the manner that it did, and its actions neither revealed actual bias nor created the appearance of bias towards Marks or towards the *pro se* defendants collectively. We therefore conclude that Marks was not denied a fair trial.

## B.

Marks argues that the district court lacked subject matter jurisdiction over the prosecution and lacked personal jurisdiction over him because the government failed to meet its burden of establishing jurisdiction once Marks challenged it. Marks also argues that the district court committed reversible error because it summarily denied Marks' challenges to the court's jurisdiction without holding a hearing.

### 1.  Applicable Standards

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1059 (9th Cir. 1991). "They possess only that power authorized by

Constitution and statute." *Kokkonen*, 511 U.S. at 377. The burden of establishing federal jurisdiction is on the party invoking federal jurisdiction. *See DaimlerChrysler v. Cuno*, 547 U.S. 332, 342 (2006); *United States v. Sumner*, 226 F.3d 1005, 1010 (9th Cir. 2000).

We review de novo a district court's assumption of jurisdiction. *United States v. Bennett*, 147 F.3d 912, 913 (9th Cir. 1998); *see United States v. Anderson*, 472 F.3d 662, 666 (9th Cir. 2006) ("Jurisdictional issues are reviewed de novo[.]").

We review for an abuse of discretion a district court's decision whether to hold a hearing on a motion. *See United States v. Hernandez*, 424 F.3d 1056, 1058 (9th Cir. 2005) (motion to suppress); *United States v. Bussel*, 414 F.3d 1048, 1054 (9th Cir. 2005) (motion for a new trial); *United States v. Smith*, 282 F.3d 759, 764 (9th Cir. 2002) (motion to substitute counsel); *United States v. Lazarevich*, 147 F.3d 1061, 1065 (9th Cir. 1998) (motion to dismiss indictment).

## 2.   *Analysis*

**[11]** The government here met its burden of establishing both subject matter and personal jurisdiction. Under 18 U.S.C. § 3231, federal district courts have exclusive original jurisdiction over "all offenses against the laws of the United States." Those offenses include the offenses with which the government charged Marks in its second superseding indictment. Accordingly, the district court had subject matter jurisdiction in this case.[4] *See United States v. Williams*, 341 U.S. 58, 65-66 (1951); *United States v. Studley*, 783 F.2d 934, 937 (9th

---

[4]The second superseding indictment alleges that Marks and the other defendants committed the offenses in the Western District of Washington and elsewhere. Marks does not contest that the District Court for the Western District of Washington was the proper venue for his prosecution. *See* 18 U.S.C. § 3232; Fed. R. Crim. P. 18 ("Unless a statute of these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.").

Cir. 1986). Likewise, the district court had personal jurisdiction over Marks by virtue of Marks' having been brought before it on a federal indictment charging a violation of federal law. *See United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003) (citing *United States v. Alvarez-Machain*, 504 U.S. 655, 659-70 (1992)); *see also United States v. Lussier*, 929 F.2d 25, 27 (1st Cir. 1991) ("It is well settled that a district court has *personal* jurisdiction over any party who appears before it, regardless of how his appearance was obtained."); *United States v. Warren*, 610 F.2d 680, 684 n.8 (9th Cir. 1980) (same).

[12] Moreover, the district court did not abuse its discretion by not holding a hearing on Marks' motions contesting the court's jurisdiction. Marks' jurisdictional challenges were frivolous. For example, Marks argued that the district court was a "federal zone" district court—one applying laws passed by Congress to citizens of the United States—as opposed to a "state zone" district court, and that because he was a "citizen and resident of the Sovereign State of California," and thus a "state zone" citizen, the court lacked jurisdiction over him. Likewise, Marks argued that 18 U.S.C. § 3231 gives jurisdiction over offenses against the laws of the United States only to an "Article III Constitutional district court of the United States" but not to a "USDC" such as the District Court for the Western District of Washington. Because those arguments were entirely without merit, the district court acted within its discretion in denying Marks' motions without a hearing. *See, e.g.*, *United States v. Sutter*, 340 F.3d 1022, 1026-27 (9th Cir. 2003) (holding that district court properly denied defendant's suppression motion without a hearing where defendant's argument was entirely without merit).

## C.

Marks argues that the district court's restitution order is

invalid because it was entered more than ninety days after sentencing, in violation of 18 U.S.C. § 3664(d)(5).**⁵**

### 1.  Applicable Standards

" 'A restitution order is reviewed for an abuse of discretion, provided that it is within the bounds of the statutory framework. Factual findings supporting an order of restitution are reviewed for clear error. The legality of an order of restitution is reviewed de novo.' " *United States v. Gordon*, 393 F.3d 1044, 1051 (9th Cir. 2004) (quoting *United States v. Stoddard*, 150 F.3d 1140, 1147 (9th Cir. 1998)).

### 2.  Analysis

[13] The ninety-day requirement of 18 U.S.C. § 3664(d)(5) is part of the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. §§ 3663A - 3664, which makes restitution mandatory, without regard to a defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss from particular crimes, including offenses involving fraud or deceit. 18 U.S.C. § 3663(A)(a)(1), (c), § 3664(f)(1)(A); *United States v. Moreland*, 509 F.3d 1201, 1222 (9th Cir. 2007).

---

**⁵**18 U.S.C. § 3664, which sets forth the procedure for issuing and enforcing an order of restitution, provides in relevant part:

> (d)(5)   If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

18 U.S.C. § 3664(d)(5).

**[14]** "The 'intended beneficiaries' of the MVRA's procedural mechanisms 'are the victims, not the victimizers.' " *Moreland*, 509 F.3d at 1223 (quoting *United States v. Grimes*, 173 F.3d 634, 639 (7th Cir. 1999)). Thus, we have recognized that " 'the purpose behind the statutory ninety-day limit on the determination of victims' losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather it is to protect crime victims from the willful dissipation of defendants' assets.' " *Moreland*, 509 F.3d at 1223-24 (quoting *United States v. Cienfuegos*, 462 F.3d 1160, 1163 (9th Cir. 2006)). Accordingly, we have concluded that "because the procedural requirements of section 3664 were designed to protect victims, not defendants, the failure to comply with them is harmless error absent actual prejudice to the defendant.' " *Moreland*, 509 F.3d at 1224-25 (quoting *Cienfuegos*, 462 F.3d at 1163).

Here, it is undisputed that the district court failed to comply with the ninety-day requirement of 18 U.S.C. § 3664(d)(5). However, we conclude that the error was harmless because Marks has failed to demonstrate that he was prejudiced. *See Cienfuegos*, 462 F.3d at 1162-63.

While Marks contends that the delay in entering the restitution order affected his rights to be present when the order was entered and to contest the restitution amount, he fails to explain why that is so. Nor does Marks contend that he suffered any other prejudice from the delay in entering the restitution order. For example, Marks does not claim that any documents or witnesses had become unavailable after the ninety-day period elapsed, or that his financial status had changed. *See Moreland*, 509 F.3d at 1225.

Moreover, Marks was provided "the functional equivalent of the notice required under section 3664(d)(5)," *Cienfuegos*, 462 F.3d at 1163, because the district court informed Marks orally at the sentencing hearing and in the written judgment that he would have to pay a substantial amount of restitution,

*see Moreland*, 509 F.3d at 1225. In fact, the amount of restitution that Marks was ultimately ordered to pay ($30,738,395) was substantially less than the amount initially cited by the district court ($42,311,742).

**[15]** Thus, Marks was not prejudiced by the delay in entering the restitution order. Accordingly, the district court's error in failing to comply with the ninety-day requirement of § 3664(d)(5) was harmless.

## D.

Marks argues that the district court's *ex parte* entry of the restitution order violated his right to be present at a critical stage of the proceeding as well as his right to allocute, *i.e.*, speak on his own behalf, at sentencing.

### 1. Applicable Standards

"A defendant has the right to be present at every stage of the trial," and that right is "both constitutional and statutory." *United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1109 (9th Cir. 2002). "The constitutional right, which is the right to be present at every 'critical stage' of the trial, is based in the Fifth Amendment Due Process Clause and the Sixth Amendment Right to Confrontation Clause." *Id.* (citation omitted). If the denial of the right to be present rises to the level of a constitutional violation, then "the burden is on the prosecution to prove that the error was harmless beyond a reasonable doubt." *Id.* A defendant also has a statutory right to be present at "every trial stage" as well as at "sentencing." Fed. R. Crim. P. 43(a).[6] If the denial of the right to be present represents

---

[6]Federal Rule of Criminal Procedure 43(a) provides in relevant part that "the defendant must be present at: (1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing." Fed. R. Crim. P. 43(a).

only a statutory violation, then "the defendant's absence is harmless error if 'there is no reasonable possibility that prejudice resulted from the absence.'" *Rosales-Rodriguez*, 289 F.3d at 1109 (quoting *United States v. Kupau*, 781 F.2d 740, 743 (9th Cir. 1986)).

[16] A defendant also has the right, before the court imposes a sentence, to "speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii).[7] We review the district court's failure to afford a defendant the right to speak on his own behalf at sentencing for harmless error. *United States v. Gunning*, 401 F.3d 1145, 1147 (9th Cir. 2005); *United States v. Mack*, 200 F.3d 653, 657 (9th Cir. 2002).

*2. Analysis*

Marks contends that because restitution is part of the criminal sentence, *United States v. Ramilo*, 986 F.2d 333, 336 (9th Cir. 1993), the district court's entry of the restitution order was part of "sentencing," at which he had the right to be present and the right to speak on his own behalf. Assuming, without deciding, that the district court's failure to provide Marks with an opportunity to be present and to speak on his own behalf when it entered the restitution order violated Marks' statutory or constitutional rights, we nevertheless find in favor of the government because any such violation was harmless error.

[17] Marks contends that the district court's failure to provide him with an opportunity to be present and to speak on his own behalf was not harmless because it prevented him from

---

[7]Federal Rule of Criminal procedure 32(i)(4)(A) provides in relevant part that, "[b]efore imposing sentence, the court must . . . (ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . . ." Fed. R. Crim. P. 32(i)(4)(A)(ii).

contesting the calculation of the restitution amount.[8] However, the record reveals that Marks was *not* so prevented: after the government provided Marks, more than three weeks before entry of the final restitution order, with a proposed amended judgment setting forth what would become the final restitution amount, Marks filed a written objection with the district court in which he complained that the government had failed to provide evidence supporting its calculation of the amount of restitution due the IRS and the 145 defrauded AAA clients. Marks fails to explain what objections to the calculation of the restitution amount he could have made that he did not already make in his written objection.

**[18]** Accordingly, we find that there is no reasonable possibility that prejudice resulted from any error by the district court and that any such error was harmless beyond a reasonable doubt. *See Gunning*, 401 F.3d at 1147; *Rosales-Rodriguez*, 289 F.3d at 1109.

### E.

Marks argues that the district court erred in failing to *sua sponte* examine Marks' competence to stand trial.

### 1. Applicable Standards

**[19]** " 'Due process requires a trial court to hold a competency hearing *sua sponte* whenever the evidence before it raises a reasonable doubt whether a defendant is mentally

---

[8]Marks also contends that the district court's failure to provide him an opportunity to be present when it entered the restitution order prevented him from objecting to the court's entry of the order more than ninety days after sentencing in violation of 18 U.S.C. § 3664(d)(5). However, as explained above, the district court's violation of § 3664(d)(5) was harmless error. Accordingly, any objection Marks might have made before the district court would have been properly denied. *See Cienfuegos*, 462 F.3d at 1162 (reviewing for harmless error because defendant timely objected to failure to follow requirements of § 3664).

competent.' " *United States v. Mitchell*, 502 F.3d 931, 986 (9th Cir. 2007) (quoting *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997)). " 'The substantive standard for determining competence to stand trial is whether [the defendant] had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding[,] and a rational as well as factual understanding of the proceedings against him.' " *United States v. Fernandez*, 388 F.3d 1199, 1251 (9th Cir. 2004) (alterations in original) (quoting *Torres v. Prunty*, 223 F.3d 1103, 1106 (9th Cir. 2000)), *amended by* 425 F.3d 1248 (9th Cir. 2005).

"On review, '[the] inquiry is not whether the trial court could have found the defendant either competent or incompetent, nor whether [the reviewing court] would find the defendant incompetent . . . .' " *Mitchell*, 502 F.3d at 986 (alterations in original) (quoting *Chavez v. United States*, 656 F.2d 512, 515-16 (9th Cir. 1981)). "Rather, the record is reviewed 'to see if the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant's competence.' " *Id.* (quoting *Chavez*, 656 F.2d at 516). We have held that there must be "substantial evidence of incompetence." *Deere v. Woodford*, 339 F.3d 1084, 1086 (9th Cir. 2003). Among the factors we consider to determine whether there was sufficient evidence of incompetence are " 'the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence.' " *Fernandez*, 388 F.3d at 1251 (quoting *Miles*, 108 F.3d at 1112).

Where, as here, the issue is raised for the first time on appeal, we review a district court's decision not to *sua sponte* order a competency hearing for plain error. *See Fernandez*, 388 F.3d at 1250-51. "Plain error is '(1) error, (2) that is plain, and (3) that affect[s] substantial rights.' " *United States v. Thornton*, 511 F.3d 1221, 1225 n.2 (9th Cir. 2008) (alterations in original) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)). "If these conditions are met, an appellate court

may exercise its discretion to correct the error 'only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (quoting *Johnson*, 520 U.S. at 467).

## 2.   *Analysis*

In support of his argument that the district court should have ordered a competency hearing, Marks points to his courtroom demeanor, his "doggedness" in arguing that the district court had no jurisdiction over him, and his second appointed counsel's representation, in filing a motion for Marks to proceed *pro se*, that he had no relationship with Marks that could assist him in representing Marks. It is true that Marks sometimes was rude to the court, that he repeatedly argued that the court lacked jurisdiction over him, and that he refused to work with, and consider himself represented by, appointed counsel. However, the record demonstrates that these acts simply reflected Marks' claimed beliefs that the court lacked legal authority over him and could not be trusted to appoint effective and neutral counsel to help him.

[20] While Marks' claimed beliefs may have been unorthodox and wrongheaded, they were not indicative of an inability to understand the proceedings against him or conduct his own defense. Despite sometimes being disrespectful to the court, Marks generally followed courtroom rules, was polite in addressing the jury and witnesses, and asked pertinent questions on cross-examination that reflected his understanding of the case and that could have been effective in undercutting the government's case against him. Accordingly, we conclude that Marks' conduct does not constitute substantial evidence of incompetence to stand trial. *See Davis v. Woodford*, 384 F.3d 628, 645 (9th Cir. 2004) ("Although there is little doubt that Davis was recalcitrant and acted in ways that were detrimental to his case, his interactions with the trial judge indicated that he understood what was at stake during the penalty phase and could make informed decisions."); *United States v.*

*Mills*, 597 F.2d 693, 699 (9th Cir. 1979) (holding that district court was not required to *sua sponte* inquire into defendant's competency where defendant was "alert, rational and responsive throughout the trial"); *see also United States v. Auen*, 864 F.2d 4, 5 (2d Cir. 1988) (upholding finding of competency where defendant's odd behavior "arose out of his position with respect to the tax law rather than mental disease" and where defendant "was able to understand the nature and consequences of the proceeding against him, and had he so chosen, could have cooperated with counsel").

The cases on which Marks relies are distinguishable. In *Chavez v. United States*, 656 F.2d 512 (9th Cir. 1981), the evidence of incompetence included a history of antisocial behavior and treatment for mental illness; several emotional outbursts, one of which resulted in the defendant's removal from the courtroom; a previous psychiatric finding of insanity based on psychoneurosis and the use of drugs; the defendant's firing of his attorneys; and an inference that the defendant had not attempted to plea bargain. *Id.* at 519. In *United States v. Williams*, 113 F.3d 1155 (10th Cir. 1997), the defendant, who had a history of drug addiction and was taking an antidepressant, repeatedly interrupted the court, was prone to making outbursts, was at one point crying and unable to control herself, announced that she was firing her attorney, and, on the second day of her two-day trial was "out of control." *Id.* at 1157-58. While Marks did reject the assistance of two appointed attorneys and, during his cross-examination of Agent Dowling, had what the court described as an "outburst," Marks was by no means "out of control," displayed no pattern of antisocial behavior throughout the 37-day trial, has presented no evidence of a history of mental illness, and has pointed to no evidence that he did not attempt to plea bargain.

**[21]** Accordingly, the district court did not plainly err in not *sua sponte* examining Marks' competency.

**F.**

Marks argues that the district court, in allowing Marks to proceed *pro se*, applied an incorrect standard in determining whether he had waived his right to counsel. Marks further argues that, even if the court applied the correct standard, he did not waive his right to counsel.

### 1. Applicable Standards

"When a defendant requests to proceed *pro se*, a district court may only grant the request after determining that the defendant 'knowingly and intelligently' waived the right to counsel." *Moreland*, 509 F.3d at 1208 (quoting *Faretta*, 422 U.S. at 835). "The burden of proving the legality of the waiver is on the government." *United States v. Farhad*, 190 F.3d 1097, 1099 (9th Cir. 1999) (citation omitted). "A waiver of counsel will be considered knowing and intelligent only if the defendant is made aware of (1) the nature of the charges against him; (2) the possible penalties; and (3) the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Id.* (citation omitted).

Whether a defendant knowingly, voluntarily, and intelligently waived his Sixth Amendment right to counsel is a mixed question of law and fact and is reviewed de novo. *Moreland*, 509 F.3d at 1209; *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir. 1990). A district court's factual finding that a waiver was unequivocal is "reversible only if clearly erroneous." *See United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994).

### 2. Analysis

First, Marks argues that the district court applied an incorrect standard for waiver of the right to counsel because it concluded, in its order granting Marks' motion to proceed *pro se*,

that Marks had "knowingly, intelligently and unequivocally asserted his right to self-representation." Marks contends that whether he asserted his right to self-representation is not the same question as whether he waived his right to counsel. However, at the *Faretta* hearing, the district court made the specific oral finding that Marks had "knowingly waived his right to counsel." Accordingly, we are satisfied that the court applied the correct standard.

Second, Marks argues that any waiver of the right to counsel was not "voluntary and intelligent" in light of the "substantial doubts" as to his competence to stand trial.

Initially, we do not agree that there were "substantial doubts" as to Marks' competence. We have already concluded that there was no substantial evidence of incompetence, and we find no substantial doubts as to Marks' competence either.

Moreover, we conclude that the record affirmatively demonstrates that Marks' waiver of the right to counsel was voluntary, knowing, and intelligent. At arraignment, the district court advised Marks of the charges and possible penalties against him. At the *Faretta* hearing, following several motions by Marks to proceed *pro se*, the court explained to Marks the dangers and disadvantages of self-representation. In addition, Marks' second appointed counsel testified at the hearing on his motion to withdraw that he had spoken to Marks about the elements and the nature of the charges, about the possible penalties, and about the disadvantages of self-representation.

Furthermore, at the *Faretta* hearing, the district court cautioned Marks that, in its opinion, it was unwise of Marks to represent himself and that he would be better off being represented by a trained attorney. The court also informed Marks that he would be required to abide by the rules of evidence and that the court would not advise him how to try his case. Marks repeatedly indicated that he understood what the court

was telling him. When the court finally asked Marks whether he still wished to represent himself and give up his right to be represented by counsel, Marks responded that he could represent himself better than any attorney appointed by the court and that his request to proceed *pro se* was "entirely voluntary."

**[22]** We conclude that Marks' waiver of his right to counsel was voluntary, knowing, and intelligent. Our conclusion is bolstered by the fact that Marks previously rejected two court-appointed attorneys and that the second attorney expressed his belief that Marks was a "fairly well-educated man" who "want[ed] to be his own attorney" and who had already acted as such by filing numerous pleadings on his own.

While at earlier hearings Marks had stated that he wanted "effective assistance of counsel" and complained that both appointed attorneys were "incompetent," he eventually made it clear that he would rather proceed *pro se* than be represented by any attorney appointed by the court. Thus, while we suspect that Marks initially "engaged in game playing, typical of a tax evader, in his responses to the court as to whether he waived his right to counsel," Marks "finally answered unequivocally that he did not want a lawyer." *United States v. Hardy*, 941 F.2d 893, 896 (9th Cir. 1991). Accordingly, the district court did not err in allowing Marks to proceed *pro se*.

### III.

We affirm Marks' conviction and sentence and affirm the judgment.

**AFFIRMED.**