**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

OCT 16 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-10193 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 2:13-cr-00330-KJM-3 |
| JOHN JAMES KASH, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Submitted October 9, 2018**
San Francisco, California

Before: D.W. NELSON, W. FLETCHER, and BYBEE, Circuit Judges.

John James Kash appeals his drug and money laundering conspiracy

conviction based on the district court's alleged structural errors at trial, including

(1) sustaining the government's objection to Kash's "alibi testimony," (2) allowing

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

the government to cross-examine Kash, and (3) denying Kash's motion to suppress evidence seized during a traffic stop. We have jurisdiction under 28 U.S.C. § 1291. We review the district court's rulings de novo, and we affirm.

1. The district court did not commit structural error by sustaining the government's objection to Kash's testimony. Kash argues that the court denied his right to present a defense when it prevented him from stating he was not in the United States during the times of the alleged offenses. We disagree.

Structural error applies only in rare circumstances, and as a general rule, constitutional errors "do not require reversal of a conviction, but are susceptible to harmless error review." *United States v. Montalvo*, 331 F.3d 1052, 1057 (9th Cir. 2003) (citing *Arizona v. Fulminante*, 499 U.S. 279, 306–07 (1991). "The list of structural defects is short and limited." *Id.* at 1057. An error is structural and requires automatic reversal when it permeates the trial from beginning to end, and therefore defies analysis under the harmless error standard. *See Rice v. Wood*, 77 F.3d 1138, 1141 (9th Cir. 1996).

Though the court sustained the objection based on the government's mistaken "lack of alibi notice" objection, the record otherwise supports the exclusion of such testimony. In reviewing a district court decision, we may affirm on any ground that has support in the record, whether or not the decision relied on

the same grounds or reasoning. *United States v. McClendon*, 713 F.3d 1211, 1218 (9th Cir. 2013); *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

The district court ruled in limine that Kash could not make his jurisdictional arguments to the jury. That ruling was not an abuse of discretion, as it excluded irrelevant, false, and potentially confusing and misleading evidence. *See United States v. Sullivan*, 797 F.3d 623, 642 (9th Cir. 2015) (noting that the right to testify in one's defense does not include a right to commit perjury); *see also*, *United States v. Marks*, 530 F.3d 799, 807 (9th Cir. 2008) (finding no error where the court ended the defendant's cross-examination of a witness because it constituted improper legal argument).

It is clear from the record that Kash's alibi defense was an attempt to make his jurisdictional arguments to the jury. Before, during, and after the trial, the record shows he continued to argue his crimes did not occur in the "territorial jurisdiction" of the United States and that he only went to trial to preserve that argument. Accordingly, the record supports sustaining the government's objection on other grounds, namely improper legal argument.

Even if we were to find an error, such error was not structural because sustaining the objection did not permeate the entire trial from beginning to end or

affect Kash's ability to present a defense. The evidence against Kash was overwhelming. Multiple witnesses, corroborated by documentary and photographic evidence, confirmed his presence at the various crime scenes throughout the United States. He declined to testify on redirect and did not challenge the evidence placing him at these locations, despite opportunities to do so during cross-examination. In other words, there was no evidence of a true alibi defense. Thus, the error would be harmless because it appears beyond a reasonable doubt that the error did not contribute to the verdict. *See Neder v. United States*, 527 U.S. 1, 15 (1999).

Moreover, when the government brought its mistaken alibi notice objection to the district court's attention, the court asked whether Kash wished to reopen evidence or have a curative instruction presented to the jury. He declined both options. Lastly, during his closing argument, he acknowledged that the government had presented evidence that he had been in California and Pennsylvania at the time of the offenses. Accordingly, even if the court sustained the objection based on a mistake, it was nonetheless an appropriate exercise of discretion that is supported by the record.

2. The district court did not err by allowing the government to cross-examine Kash. Kash argues that the government compelled him to incriminate himself

during cross-examination. Kash further contends that we should review the district court's decision using the structural error standard. These arguments fail.

When a defendant does not object to cross-examination during a trial, we review for plain error. *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1201 (9th Cir. 2015). In general, a "defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined on matters made relevant by his direct testimony." *United States v. Black*, 767 F.2d 1334, 1341 (9th Cir. 1985). Also, "[t]he Fifth Amendment privilege is not ordinarily self-executing and must be affirmatively claimed by a person whenever [there is a threat of] self-incrimination." *United States v. Anderson*, 79 F.3d 1522, 1527 (9th Cir. 1996). Though the court advised Kash of his Fifth Amendment right not to incriminate himself, he voluntarily chose to testify. Additionally, he did not object to any of the questions during cross-examination or assert his Fifth Amendment privilege. Because of the overwhelming evidence against Kash outside of cross-examination—including his admission during his closing argument that he was in California and Pennsylvania during the time of the offenses—any error in allowing cross-examination was harmless and did not affect the outcome of the trial.

3. The district court correctly denied Kash's suppression motion. Kash argues that the traffic stop was unconstitutionally prolonged, that he did not

voluntarily consent to a search of his car, and that the court should suppress any evidence found in Jamie Adams's Jeep. He argues further that the district court's alleged errors were not harmless beyond a reasonable doubt. We disagree.

Whether reasonable suspicion supports an investigatory stop is a question of both law and fact. *United States v. Diaz-Juarez*, 299 F.3d 1138, 1140 (9th Cir. 2002). We review mixed questions of law and fact de novo with the factual findings reviewed for clear error. *Id.*

Here, after assessing the investigating officer's testimony during a suppression hearing and finding it credible, the district court found that the officer pulled Kash over because Kash was following another car, Jamie Adams's Jeep, too closely. Next, Kash sat in the officer's car while the officer wrote the citation and ran routine checks on Kash's record. During this time, the officer engaged Kash in casual conversation. According to the officer, Kash's answers to his questions caused him to become suspicious that Kash was involved in criminal conduct.

The district court is correct that *Rodriguez v. United States* does not prohibit all questioning during a traffic stop beyond what is needed to complete a citation. 135 S. Ct. 1609, 1614-15 (2015). Rather, *Rodriguez* held that an officer may not extend an otherwise completed traffic stop, absent reasonable suspicion, to conduct

6

a drug dog sniff. *Id.* Accordingly, we agree with the district court that the officer did not prolong the traffic stop beyond what was reasonably necessary to perform the permissible tasks outlined in *Rodriguez*. Neither the record nor the law supports Kash's contention that the officer was not lawfully completing the traffic stop while they conversed.

Whether a person voluntarily consents to search or not is determined from the totality of all the circumstances. *United States v. Johnson*, 875 F.3d 1265, 1276 (9th Cir. 2017). We review a district court's factual determination of voluntary consent to a search for clear error, and we view the evidence in the light most favorable to that decision. *See United States v. Washington*, 490 F.3d 765, 769 (9th Cir. 2007); *see also United States v. Kaplan*, 895 F.2d 618, 622 (9th Cir. 1990).

Kash argues that his consent to search his car was not valid because the officer created the appearance that the use of the drug dog was inevitable. This argument is not supported by the record. Here, the video evidence of the traffic stop, along with the officer's testimony, which the district court found credible, show that Kash voluntarily consented to the search of his car. Moreover, the officer's testimony at the evidentiary hearing that he probably would have had his drug dog conduct a sniff search if Kash had not consented is irrelevant to the

voluntariness analysis. There is no evidence in the record to support Kash's claim that it would have been futile to object to the search.

Finally, Kash lacks standing to challenge the search of the Jeep because he is not the owner and disclaimed ownership of any items in the Jeep at the time of the search. Even if he did have standing, the exclusionary rule would not apply because probable cause supported the search. First, Kash has not provided a legal theory challenging the search of the Jeep. Second, Kash admits that it wasn't until his October 28, 2015 evidentiary motion that he claimed ownership of the toolbox found in Jamie Adams's Jeep. We have held that a defendant lacks standing to challenge a search when the defendant initially disclaims ownership but later asserts it. *See, e.g.*, *United States v. Nordling*, 804 F.2d 1466, 1470 (9th Cir. 1986); *United States v. Veatch*, 674 F.2d 1217, 1220–21 (9th Cir. 1981).

Accordingly, for the preceding reasons we **AFFIRM**.