Circuit Judge TALLMAN
with whom Chief Judge KOZINSKI and Circuit Judges O’SCANNLAIN, BYBEE, CALLAHAN, BEA, IKUTA, and N.R. SMITH join,
dissenting from the denial of rehearing en banc:
By failing to take this case en banc we have made a hash of the plain error standard. Under the guise of a plain error review, the majority has conducted a de novo analysis, concluding that the district court plainly erred by not sua sponte ordering a competency hearing prior to sentencing. The majority’s decision is not only irreconcilable with our prior precedents, it also will wreak havoc on sentencing proceedings. In the wake of this decision, district judges may feel compelled to order a competency hearing any time a defendant suffers from a medical condition and, as a result, cannot “expres[s] himself appropriately or in a manner that could assist in his defense.” United States v. Dreyer, 693 F.3d 803, 813 (9th Cir.2012).
Federal courts nationwide pronounced 86,000 sentences in 2011; 21,000 of these sentences were pronounced in the Ninth Circuit alone. United States Sentencing Commission, Statistical Information Packet 3 tbl. 2 (2011). Defendants with medical and psychological deficiencies that prevent or impair their ability to allocute are not infrequently sentenced, and district courts, quite properly, do not routinely conclude that such impairments rise to the level of legal incompetence. The Dreyer opinion affords no deference to district courts, which are uniquely qualified to evaluate competency at sentencing, and will only result in unnecessary and expensive evaluations, hearings, resentencings, and remands when evidence of legal incompetence is limited or absent.
To justify its conclusion, the majority relies on a distorted interpretation of the facts and a tortured construction of existing precedent. The majority finds plain error even though three doctors opined that Dreyer was competent to plead guilty, and even though no evidence suggested that Dreyer’s mental condition had deteriorated after he was last found competent, and even though neither party suggested a need for a competency evaluation prior to sentencing, and even though Dreyer’s behavior in court did not suggest the need for further evaluation. In vacating Dreyer’s sentence, the majority has improperly substituted its judgment for that of the district court, resulting in an opinion that will undermine the finality of any number of properly imposed sentences.
*954 I
The record does not support the majority’s ruling that the district court’s failure to sua sponte conduct a competency hearing constituted plain error. The district court’s omission would only be error if, in light of the information contained in the record, a reasonable judge would have experienced genuine doubt regarding the defendant’s competence. United States v. Marks, 530 F.3d 799, 814 (9th Cir.2008). In determining whether such doubt exists, we must consider the following factors: “the defendant’s irrational behavior, his demeanor in court, and any prior medical opinions on his competence.” Id. (internal quotation marks omitted). None of these factors support the majority’s conclusion that there was “substantial evidence” sufficient to raise a genuine doubt that Dreyer was incompetent to be sentenced. Id. (internal quotation marks omitted).
Three reports compiled by four medical experts each concluded that Dreyer suffered from early stage frontotemporal dementia. None opined that Dreyer’s medical condition rendered him legally incompetent. Instead, the doctors expressly found that Dreyer’s dementia did not “cause[] him to be unaware of the nature and consequences of his behavior, or that what he was doing was wrong,” that Dreyer’s “cognitive skills were intact,” and that Dreyer was “competent to plead guilty.” Dreyer, 693 F.3d at 816 (Callahan, J., dissenting) (internal quotation marks omitted).
Furthermore, as Dreyer concedes, he “did not manifest any observable signs of incompetency during the sentencing hearing.” Id. at 817. He responded to the district court’s inquiries in a coherent and respectful manner, and appeared to interact with his attorneys thoughtfully and to respond appropriately to evidence introduced against him. Although Dreyer declined to participate in allocution, this decision does not necessarily evidence incompetence, but rather is merely one factor that must be evaluated when considering whether Dreyer could “understand the nature and consequences of the proceedings against him [and] to assist properly in his defense.” 18 U.S.C. § 4241(a).
The district court was fully aware that Dreyer suffered from a medical disorder that at times impaired his inhibition and insight. The district judge reviewed the expert reports evaluating Dreyer’s mental health, considered Dreyer’s medical condition in calculating an appropriate sentence, and personally observed Dreyer’s behavior in court. In finding plain error, the majority disregarded the district court’s assessment of a fact-intensive competency inquiry, which is necessarily informed by the judge’s personal perception of Dreyer’s behavior at sentencing. On this record, the alleged failure to order a competency evaluation was not an “error that is so clear-cut, so obvious” that no competent district judge would have imposed sentence in its absence. United States v. Turman, 122 F.3d 1167, 1170 (9th Cir.1997). As a result, the majority’s conclusion that the district court committed plain error is not defensible.
II
The majority’s conclusion is a significant expansion of existing precedent, under which we have found plain error only when the quality and magnitude of mental health evidence far exceeded what has been presented in this case. The evidence of Dreyer’s mental deficiencies does not begin to approximate the record of delusional psychosis and brain damage suffered by the defendants in United States v. Duncan, 643 F.3d 1242 (9th Cir.2011), and Odie v. Woodford, 238 F.3d 1084 (9th Cir.2001).
*955 In Duncan, we held that the district court erred in failing to order a competency hearing before imposing sentence. In that case, three experts concluded that the defendant suffered from delusions and was incompetent to represent himself, MRI and PET scans showed “an unusual brain structure consistent with behavioral deficits in the ability to make rational plans and modulate emotions,” and defense counsel expressed genuine concern regarding the defendant’s competency. Duncan, 643 F.3d at 1249 (internal quotation marks omitted).
In Odie, we found error after noting that the defendant suffered severe trauma requiring the removal of a grapefruit-sized portion of his brain, attempted suicide, and was committed to psychiatric wards three times in as many years. Odle, 238 F.3d at 1088-89. Medical reports and expert evaluations evidenced that the defendant had an “organic brain disorder,” experienced hallucinations, “seemed confused,” and “beat his head against the wall.” Id. Given the defendant’s lengthy medical history demonstrating severe mental impairments, we found that: “Where a petitioner has suffered massive trauma to his brain and subsequently exhibits psychotic behavior, some of it while awaiting trial, an inquiry into whether he possesses the mental acuity to participate in the proceedings is the reasonable and appropriate course of action.” Id. at 1089.
None of the expert reports evaluating Dreyer’s mental state identify any symptoms, diagnoses, or conditions that rise to the level of mental impairment evidenced in Duncan or Odie. Instead, the experts’ conclusions support a finding that Dreyer was competent to be sentenced. Defense counsel’s statements at sentencing do not alter this analysis. Counsel informed the court that Dreyer would not allocute due to his frontotemporal dementia, which might cause him to “speak inappropriately,” “make denials,” or “not accept responsibility.” Dreyer, 693 F.3d at 807 (majority opinion). These statements were fully consistent with the district court’s prior understanding of Dreyer’s impaired verbal, behavioral, and impulse control, and should not have created any further doubt as to Dreyer’s competency to be sentenced. Absent further medical evidence of impaired comprehension, it was inappropriate under plain error review for the panel majority to declare that a reasonable jurist would have a genuine doubt as to Dreyer’s competency.
Ill
The majority’s conclusion cannot be reconciled with our prior cases in which we held that plain error was not established. As the dissent accurately notes, when a “defendant has a medical or mental health condition that may affect the brain but does not interfere with the defendant’s ability to rationally consult with his attorney and understand the proceedings, this Court has not found sufficient evidence of incompetencfy]” to support a finding of plain error. Id. at 820 (Callahan, J., dissenting) (emphasis added).
For example, in United States v. White, 670 F.3d 1077, 1084-85 (9th Cir.2012), we found that “a reasonable judge [would not have] a bona fide doubt” as to the defendant’s competency, even though the defendant exhibited outbursts in court and his attorneys indicated that he may suffer from delusions. In United States v. Mendez-Sanchez, 563 F.3d 935, 940-41, 948 (9th Cir.2009), we concluded that the district court did not plainly err in failing to sua sponte order a competency hearing, despite evidence that the defendant behaved irrationally and experienced difficulties communicating with his counsel.
The majority attempts to distinguish these cases, concluding that neither in *956 volved a defendant with a “diagnos[ed] ... medical disorder bearing on the defendant’s mental state.” Dreyer, 693 F.3d at 812 (majority opinion). However, this distinction misses the point. The sole inquiry must be whether the defendant was incapable of comprehending the proceedings or rationally communicating with counsel. See 18 U.S.C. § 4241(a). The impact of a medical condition on a defendant’s mental state is irrelevant unless the identified deficiencies interfere with the defendant’s ability to consult with his attorney or understand the proceedings.
IV
The majority assigns improper weight to the fact that Dreyer chose not to allocute. In doing so, the majority adds to the existing standard of legal competence by requiring that the defendant be able to speak persuasively on his own behalf at sentencing. See United States v. Fernandez, 388 F.3d 1199, 1251 (9th Cir.2004). According to the majority opinion, “[c]ompetenc[y] at sentencing therefore requires ... that the defendant be able to ... participate] in his ‘elementary right’ of allocution.” Dreyer, 693 F.3d at 809. We have never held that a defendant’s election not to allo-cute, even if compelled by a medical or physical condition, is alone sufficient to require a competency hearing. Unable to rely on prior precedent, the majority manufactures a new competency standard out of whole cloth.
The majority’s opinion suggests that a district court must sua sponte conduct a competency hearing anytime a defendant declines to speak at sentencing because of a “diagnose[d] ... medical disorder affecting the defendant’s mental condition.” Dreyer, 693 F.3d at 812. This quoted language necessarily encompasses a wide range of potential psychological and mental impairments. Nothing in the majority’s opinion limits its impact to defendants who have organic causes for their mental impairment or degenerative diseases that have a clear effect on the structure of their brain. Without further guidance, a district court may rationally conclude that it must sua sponte order a hearing when any number of impairments are identified. This result imposes a substantial burden on district courts and will only unnecessarily complicate sentencing proceedings.
V
The district court did not commit plain error, defined as an “error that is so clear-cut, so obvious,” that no “competent district judge” would make such a mistake, even “without the benefit of objection.” Turman, 122 F.3d at 1170. The majority’s decision cannot be reconciled with our pri- or precedents, under which we have found plain error only when the quality and magnitude of mental health evidence far exceeded what has been presented in this case. In their place, the majority has crafted an opinion that alters the existing standard for legal competence, fails to accord adequate respect for district courts charged with conducting sentencing proceedings, and undermines the finality of properly imposed criminal sentences. In light of the substantial medical evidence already available to the district court, there was no error seriously affecting the fairness, integrity, or reputation of the sentencing proceedings.
District courts now face the real risk of reversal for declining to act when neither party suggests there is a competency concern but the defendant elects not to allo-cute for medical reasons. Applying the majority’s opinion, reversal will be required even though the defendant’s condition does not impact the defendant’s ability to understand the sentencing proceedings or to rationally communicate with counsel. In attempting to comply with this misguided decision, district courts are left to navi *957 gate the shoals of Scylla and Charybdis. The Court should have voted to rehear this case en banc to remove this hazard to navigation.
OPINION
Opinion by
Judge REINHARDT, Circuit Judge:
At the age of 63, Joel Dreyer experienced the onset of frontotemporal dementia, a degenerative brain disorder that causes changes in personality and behavior, impairs social interactions, and causes disinhibition and a loss of insight and impulse control. He was a practicing psychiatrist at the time. From the age of 66 to 69, despite having no criminal history, Dreyer participated in a conspiracy to distribute controlled substances, and in December 2010, at the age of 73, he was sentenced to ten years imprisonment after he pleaded guilty to charges related to that conspiracy.
At the sentencing hearing, the district court was provided with three expert reports: all three diagnosed Dreyer with frontotemporal dementia and noted that he exhibited textbook manifestations of the condition since its apparent onset in 2001, three years before his participation in the controlled substance conspiracy, and that his symptoms persisted into the present. Dreyer did not allocute at sentencing and defense counsel informed the court that his client would not address it due to the dementia’s effect on his behavior. Defense counsel did not move for a competency hearing and the district court did not order a hearing sua sponte. The court sentenced Dreyer to 120 months. Dreyer appeals his sentence, contending that the district court erred by failing sua sponte to order an evidentiary hearing to determine his competency at the time of sentencing.
We hold that the record before the district court at sentencing was sufficient to cause a genuine doubt as to the defendant’s competence and that the court committed plain error by failing to order a hearing sua sponte. Accordingly, we vacate Dreyer’s sentence and remand for the district court to evaluate Dreyer’s competency on the basis of an evidentiary hearing.
BACKGROUND
Dreyer experienced a medical emergency in 2001 that coincided with the onset of frontotemporal dementia. Immediately after being released from the hospital, Dreyer’s family noticed significant changes in his personality and behavior. Within a few years Dreyer ended his previously-happy marriage to his wife of 17 years, engaged in uncharacteristic behavior and withdrew from his family to such a degree that friends and relatives concluded that he was exhibiting early signs of dementia.[1] Despite the family’s concerns, his illness remained undiagnosed. In 2004, the 66-year-old Dreyer, a licensed psychiatrist, began providing prescriptions of oxyco-done and hydrocodone to patients outside of the usual course of professional practice. In 2007 Dreyer was indicted on charges related to his participation in a conspiracy to possess and to distribute controlled substances. Although Dreyer had difficulty recognizing or admitting that his actions *958 were inconsistent with professional standards of conduct, he nonetheless pleaded guilty in September 2009 to two counts of the thirty count indictment.
Prior to sentencing, Dreyer submitted three different expert reports to the court, all of which diagnosed him as suffering from frontotemporal dementia.[2] Two of the reports were obtained from experts hired by the defense, while the third expert was selected by the government but jointly commissioned by both parties. All three reports were consistent in their diagnoses and descriptions of Dreyer’s symptoms. The joint report authored by the expert recommended by the prosecution, Dr. Martell, noted that Dreyer exhibited “behavioral disinhibition, frontal lobe cognitive dysfunction, memory impairment, loss of smell (anosmia), impaired word-finding ability (dysnomia), hypersexuality, loss of tact and social propriety, and lack of insight into his own impairments (ano-sagnosia).” The Martell report noted that Dreyer’s affect was normal and that he retained the ability to articulate, but that he suffered from “moderately severe impairment” in three areas of brain functioning: executive control, language, and memory. The report also stated that this condition affected his behavior and ability to communicate, as well as his ability to regulate his speech appropriately or to have insight into his own behavior.
Doctors Amen and Krause authored one of the two reports commissioned by the defense (“the Amen/Krause report”). Their report included brain imaging results showing “extensive frontal lobe damage” causing “his judgment [to] be severely impaired and his insight also impaired.” The results of their neuropsychological testing similarly “revealed deficits that are consistent with Frontotemporal Dementia,” which “affects the part of the brain that regulates comportment, insight and reasoning.” Dr. Rudnick, the author of the final report, also concluded that Dreyer suffered from “impaired judgment, disinhibition and impulsivity that ... rendered him vulnerable to acting rashly and without consideration of the consequences.” He stated that Dreyer’s history reflected a “textbook description of [fron-totemporal dementia],” which “presentís] in the early phases with behavioral and personality changes, with cognitive deficits appearing later.” Rudnick reported that Dreyer’s “verbal output was laced with inappropriate sexual references, profanity and facetiousness [and] [h]e exhibited im-pulsivity in his responses, disinhibition and expansiveness to the point of grandiosity.” Despite Dreyer’s propensity for falsehoods and exaggerations, the doctor stated that “any distortions are the result of his faulty judgment, insight and recall rather than intentional misrepresentation.” Rudnick concluded by noting the degenerative nature of the disease. He observed that frontotemporal dementia is both “irreversible and progressive,” and that Dreyer’s “long-term prognosis is quite dismal,” with an average life span of 3.4 years from the time of diagnosis and a diminishing ability to live independently in the interim.
The evaluations of the four experts consulted were substantially similar, and the reports explicitly disagreed only in their conclusions about Dreyer’s competency. Martell’s report specifically opined as to whether Dreyer was incompetent when he entered his guilty plea. Martell concluded that he was competent at the time of his *959 plea and had taken “full responsibility for having engaged in improper prescribing practices.” When he considered Dreyer’s mental state at the time of the offense, however, he acknowledged that Dreyer “engaged in the behaviors for which he has plead guilty while suffering from Dementia and an organic personality disorder that rendered him disinhibited, and impaired his judgment,” and that this fact “may mitigate or reduce his culpability ... as his moral compass was effectively compromised by brain damage over which he had impaired control.” The Amen/Krause report came to a contrary conclusion as to Dreyer’s competency: it concluded that the dementia “caused him to engage in activities that he may not have clearly understood such as in the plea agreement.” Rudnick’s report did not offer any explicit conclusions as to Dreyer’s competency, but stated, consistent with the other reports, that “his dementia prevented him from accurately critiquing or monitoring his own behavior and from foreseeing its consequences,” and that throughout the time that he engaged in the activities for which he was being prosecuted, Dreyer “was truly convinced that his actions did not constitute professional violations.”
All three expert reports were submitted to the court prior to Dreyer’s sentencing hearing in December 2010. The presen-tence report recommended a sentence between 188 and 285 months, and the government requested a sentence of 121 months. Dreyer’s attorney argued for a sentence of probation due to Dreyer’s deteriorating health and the fact that his unlawful conduct was precipitated by the onset of a disease that substantially impaired his ability to make decisions and differentiate right from wrong. Explaining the effect of frontotemporal dementia, counsel stated that “[tjhis disease takes people, and it doesn’t rob them of their intellect, it robs them of their moral compass.” He equated the proposed 121-month sentence to a death sentence for the then-73-year-old Dreyer, due to the progression of the disease and unfavorable prognosis.
Dreyer did not speak on his own behalf at sentencing. His attorney explained his decision to direct Dreyer not to speak as follows:
My client isn’t going to speak today because one of the characteristics of the disease is that I don’t know what he’s going to say. He could speak inappropriately. He could make denials. He could accept responsibility, then not accept responsibility. That’s also a characteristic of this disease.
Counsel went on to ask for mercy on Dreyer’s behalf, asking the court to “understand that Dr. Dreyer is partially with us, partially not with us, and that’s why he’s not speaking. I can’t even imagine what he would say to you, Your Honor, and I can’t even imagine what his perception of the truth is in 50 percent of the cases.” After defense counsel presented his argument on behalf of Dreyer, the district court fulfilled its obligation to personally address the defendant. In response, Dreyer stated that he respected the judge and appreciated her comments.
The court sentenced Dreyer to 120 months and made a recommendation to the Bureau of Prisons that Dreyer be housed at the federal medical center in Rochester, Minnesota. Dreyer appeals his sentence contending that the district court erred by failing sua sponte to order an evidentiary hearing to determine whether he was competent at the time of sentencing.
DISCUSSION
I.
The district court has a statutory duty to “order ... a [competency] hearing on its own motion, if there is reasonable cause *960 to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.” 18 U.S.C. § 4241(a). “On review, [the] inquiry is not whether the trial court could have found the defendant either competent or incompetent, nor whether [the reviewing court] would find the defendant incompetent.... Rather, the record is reviewed to see if the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant’s competence.” United States v. Marks, 530 F.3d 799, 814 (9th Cir.2008) (alterations in original) (internal citations and quotation marks omitted). Here, the district court committed error by failing to order a competency hearing sua sponte despite a record that raises a genuine doubt that the defendant was incapable of assisting properly at the sentencing proceeding.
Alleged errors that are unobjected to in the district court are generally subject to plain error review. United States v. Olano, 507 U.S. 725, 731-32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We have explicitly applied the plain error standard in our review of the district court’s failure sua sponte to order a competency hearing. Marks, 530 F.3d at 814; United States v. Fernandez, 388 F.3d 1199, 1250-51 (9th Cir.2004). But see United States v. Mitchell, 502 F.3d 931, 986-97 (9th Cir. 2007) (not subjecting the trial court’s failure sua sponte to conduct a competency hearing to plain error review). “Relief for plain error is available if there has been (1) error; (2) that was plain; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings.” United States v. Cannel, 517 F.3d 1172, 1176 (9th Cir.2008). As a practical matter, a district court’s failure to conduct a competency hearing on its own motion will always be subject to plain error review. This is because a defense counsel who is attuned to his client’s mental condition and recognizes that the defendant’s competency is in question would not leave it up to the district court to order a competency hearing sua sponte, rather, he would move for such a hearing himself. If his motion was denied we would then evaluate the district court’s denial of the motion rather than its failure to order a hearing sua sponte. See, e.g., United States v. Duncan, 643 F.3d 1242 (9th Cir.2011). Therefore, the question currently before us, whether the district court’s failure to order a competency hearing sua sponte, will always be raised for the first time on appeal.
If we find that “evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant’s competence,” Chavez v. United States, 656 F.2d 512, 516 (9th Cir.1981), then the first two prongs of the Olano test are satisfied, leaving the questions of substantial rights and fairness. One of the foundational principles of our judicial system is the belief that an individual should neither be allowed to stand trial nor have his sentence carried out if he is incompetent. See, e.g., Riggins v. Nevada, 504 U.S. 127, 139-140, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring in the judgment) (“Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial.”) (citing Drope v. Missouri, 420 U.S. 162, 171-172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). Allowing a judicial proceeding to continue when there is genuine doubt as to the competence of the accused plainly implicates the substantial rights of the accused and seriously affects the fairness, integrity and public reputation of the judicial proceedings. Thus, while we must *961 subject Dreyer’s claim to plain error review, the analysis is ultimately reducible to the question of whether “the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant’s competence.” Chavez, 656 F.2d at 516. Where the answer is yes, the failure to order a competency hearing sua sponte is plain error.
II.
Here, we must determine whether the district court had before it sufficient evidence to create a bona fide doubt as to Dreyer’s competency. “Competence is defined as the ability to understand the proceedings and to assist counsel in preparing a defense.” Miles v. Stainer, 108 F.3d, 1109, 1112 (9th Cir.1997) (citing Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)). “[T]he competency right does not end at a conviction,” but rather persists through sentencing. Duncan, 643 F.3d at 1248; U.S. v. Ahrendt, 560 F.3d 69, 74 (1st Cir.2009) (“The obligation to determine competency to stand trial is continuing, and persists throughout a proceeding including through the sentencing phase.”); see also 18 U.S.C. 4241(a) (noting that the inquiry into a defendant’s competence may take place “any time after the commencement of a prosecution ... and prior to the sentencing of the defendant.”). The record raises a question as to the defendant’s competence if there is substantial evidence that, due to a mental disease or defect, the defendant is either “unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.” United States v. Friedman, 366 F.3d 975, 980 (9th Cir.2004) (emphasis in original) (quoting 18 U.S.C. § 4241(d)) (holding that the district court properly found the defendant incompetent where he was able to understand the proceedings but not capable of assisting properly in his defense). Although the level of competency mandated by due process does not vary based on the specific stage of the criminal proceeding, Godinez v. Moran, 509 U.S. 389, 400-01, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the defendant’s ability to participate or assist his counsel must be evaluated in light of the type of participation required.
“Sentencing is a critical stage of the criminal process,” Boardman v. Estelle, 957 F.2d 1523, 1525 (9th Cir.1992) (citing Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)), and the defendant’s allocution, “is an essential element of a criminal defense.” Id. at 1526. Competence at sentencing therefore requires, among other things, that the defendant be able to assist in his own defense by participating in his “elementary right” of allocution. Id. at 1527 (quoting United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963)). Although a defendant is not compelled to speak on his own behalf at sentencing, courts have long recognized the importance of affording him such an opportunity. The creation of various procedural protections has not “lessen[ed] the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.” Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). At sentencing, “the test [of competency] is whether the defendant is able to understand the nature of the proceedings and participate intelligently to the extent participation is called for.” Chavez, 656 F.2d at 518 (9th Cir. 1981). The ability to alloeute, in short, is an essential element of this participation.
At sentencing Dreyer refrained from allocuting. While the defendant has *962 the right to make this choice, defense counsel explained the reason underlying Dreyer’s silence: his disease prevented him from coherently speaking on his own behalf. Counsel expressed concern that Dreyer might contradict himself by accepting responsibility and then refusing to do so, or would speak to the court inappropriately. He also explicitly informed the court that Dreyer had difficulty perceiving the truth as a result of his dementia and was only “partially with us.” The decision not to allocute was therefore obviously viewed by the defense as necessitated by Dreyer’s medical condition.
Although it is true that “defense counsel will often have the best-informed view of the defendant’s ability to participate in his defense,” Medina v. California, 505 U.S. 437, 450, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), the district court need not have relied merely on the defense counsel’s statements to determine whether Dreyer’s competence was in question. Counsel’s assessment of Dreyer was supported by all three medical evaluations presented to the court. Although the medical experts described Dreyer as generally cooperative and articulate, they also found his behavior to be inappropriate, his personality emotionally-blunted, and his speech laced with sexual references and profanity. He was prone to lies and exaggerations due to his faulty judgment, insight and recall. Despite Dreyer’s apparent proclivity for falsehood, the experts observed that these statements were not made in a deliberate attempt to misrepresent the truth. Dreyer lacked an awareness of social norms of comportment and exhibited poor social judgment and a penchant for engaging in provocative and antagonistic behavior had already resulted in his receiving a severe beating during his brief prison stay. The experts explicitly recognized that Dreyer had a “profound lack of social propriety,” and an inability to “filter himself effectively.” They additionally noted that he was prone to making inflammatory religious and racial statements that conflicted with his long-held beliefs, and that, if incarcerated, he would need protective custody “essentially to protect him from himself.” As a result of his frontotemporal dementia, Dreyer was not only incapable of making a reasoned plea for leniency, but was unable to even refrain from making comments that were contrary to his own beliefs and that placed him in physical danger. The uncontradicted medical evidence before the district court supported counsel’s representation that Dreyer’s failure to allo-cute was compelled by his ailment and his resultant inability to regulate his speech or behavior in a manner that could assist in his defense. Given the consistency between counsel’s statements and the supporting expert reports, the district court had substantial evidence before it that should have created a reasonable doubt in its mind as to Dreyer’s ability to assist in his own defense, and thus as to his competency.
III.
The cases in which this court has concluded that there was no basis for the trial court to doubt the defendant’s competency, including all those cited by the government, involve substantially less evidence to suggest ineompetency than the case before us. For instance, in United States v. Mendez-Sanchez, 563 F.3d 935, 939-40 (9th Cir.2009), there was no diagnosis of any mental disorder or defect. The defendant was uncooperative with his attorneys, but when asked explicitly by the judge whether the defendant might be incompetent, defense counsel reported that they did not believe that he was. Id. at 941-42, 947-48. Instead, counsel told the court, the defendant’s difficulties were based solely on a refusal to accept facts which he did not like. Id. In United States v. Marks, 530 F.3d 799 (9th Cir.2008), the defendant was *963 rude, asserted that the court lacked jurisdiction over him and was uncooperative with counsel. 530 F.3d at 814-815. Again, however, there was no medical diagnosis to suggest that the defendant might be incompetent, and his counsel did not alert the court to any possible difficulties. In Davis v. Woodford, 384 F.3d 628 (9th Cir.2004), the defendant refused to wear civilian clothes or sit at the counsel table. There was no medical evidence indicating any kind of ailment, nor did counsel assert that the defendant was incapable of assisting in his defense. Id. at 645-46. On appeal the defendant alleged only that “[t]he trial court judge was in a position to gauge whether a competency hearing would be in order,” but this court determined that his unusual behavior alone was insufficient to create a genuine doubt as to his competency, and that his actions reflected a reasoned choice. Id. at 646.
In all of these cases, there was only comparatively minor inappropriate courtroom behavior. There was no evidence that the defendant would be unable to understand or participate in the proceedings. In contrast to Dreyer’s sentencing proceedings, there were no statements by counsel or medical diagnoses that would have produced a genuine doubt as to the defendant’s competency in the mind of a reasonable judge. In fact, in these cases when medical evidence was presented, or defense counsel made a statement to the court regarding the defendant’s competence, the evidence supported a finding of competency. Here, the opposite is true. The court had a clear diagnosis of fronto-temporal dementia from multiple sources, including one selected by the government, and all of the expert reports noted the defendant’s inability to regulate his behavior and speech as a result of this illness. The court also had counsel’s express statements that the defendant would not speak on his own behalf as a result of his medical condition. The cases cited by the government are therefore inapplicable.[3]
When this court has considered a record containing expert diagnoses of a medical disorder bearing on the defendant’s mental state we have found this evidence sufficient to cause genuine doubt as to the defendant’s competency. See, e.g., Deere v. Woodford, 339 F.3d 1084, 1086-87 (9th Cir.2003); Odle v. Woodford, 238 F.3d 1084, 1088-89 (9th Cir.2001); Morris v. United States, 414 F.2d 258 (9th Cir.1969) (per curiam). Even in the absence of expert evidence, we have found cause to grant a motion for a competency hearing when defense counsel reported an attempted suicide by the defendant the night *964 before trial. United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir.1997). District courts to which such evidence is presented are obligated to determine only whether doubt has been created, not whether the defendant is competent or incompetent. In such cases that question can ordinarily be resolved only after an evidentiary hearing.
Although each case presents a unique set of facts, the case that involved the most comparable record before the district court is United States v. Duncan, 643 F.3d 1242 (9th Cir.2011).[4] In Duncan, the record before the district judge included five competing expert reports: two from court-appointed experts that found “no evidence of psychotic behaviors or thought processes,” id. at 1246, and three from defense experts that found that the defendant suffered from “severe psychosis,” id. at 1249, and were accompanied by a brain scan showing “unusual brain structure consistent with behavioral deficits in the ability to make rational plans and modulate emotions.” Id. at 1249. The record also included letters written by the defendant, some of which “appear[ed] rational” while the others included statements that were “unusual.” Id. at 1250. Lastly, as evidenced by the motion for a competency hearing, counsel in Duncan also expressed a belief that the defendant was not competent. Id. at 1245. On review this court concluded that the evidence presented to the district court created a “reasonable doubt about the Defendant’s competence, such that § 4241(a) required a full competency hearing before the district court could reach a decision.” Id. at 1250.
The trial court here, as in Duncan, was faced with a record that included diagnoses of a medical disorder affecting the defendant’s mental condition and behavior. Although Dreyer’s counsel did not move for a competency hearing, he explicitly informed the court that his client’s disease prevented him from participating in his defense to the extent that further participation was called for. As in Duncan, we must therefore conclude that the evidence on the record was sufficient to create a reasonable doubt as to Dreyer’s competence and thus compelled the district court to order a competency hearing sua sponte.
The government primarily relies on Dreyer’s calm demeanor at sentencing to argue that the record was insufficient to create reasonable doubt as to his competence. Among the factors to consider when evaluating whether a court erred in failing to order a competency hearing sua sponte, are the “defendant’s irrational behavior, his demeanor at trial, and any pri- or medical opinion on competence,” Drope v. Missouri, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), however, “[n]one of these factors is determinative,” Miles v. Stainer, 108 F.3d 1109, 1112 (9th Cir.1997), and “even one of these factors standing alone may, in some circumstances, be sufficient.” Drope, 420 U.S. at 180, 95 S.Ct. 896. While the defendant’s courtroom behavior may provide insight into his mental condition, we have previously observed that a “judge may be lulled into believing that [the defendant] is competent by the fact that he does not disrupt the proceedings, yet this passivity may itself mask an incompetence to meaningfully participate in the process.” Odie, 238 F.3d at 1089. Here, according to the undisputed facts in the record, counsel’s decision that Dreyer should not allocute was *965 “a strategy for controlling his behavior,” id. at 1089, n. 6; it was necessitated by a mental ailment, and was not proof of Dreyer’s competence. Dreyer’s condition, as described in detail by the three expert reports, did not manifest itself in violent outbursts, but instead prevented him from expressing himself appropriately or in a manner that could assist in his defense. Given the expert opinions that supported defense counsel’s representation that Dreyer was unable to assist in his defense due to his medical condition, the record creates a genuine doubt as to Dreyer’s competency even in the absence of observable courtroom antics.
IV.
Given the substantial evidence of Dreyer’s lack of competency, we hold that the district court’s failure to order a competency hearing sua sponte constituted plain error. We vacate Dreyer’s sentence and remand for the district court to hold an evidentiary hearing.
VACATED and REMANDED.

. Dreyer’s family recounted a number of instances in which he behaved in ways that starkly contrasted with his pre-onset behavior. Among them was an instance when Dreyer appeared wearing dress slacks and nude from the waist up in the lobby of an expensive hotel to meet with his daughter and a family friend. His daughter also described Dreyer as behaving “detached and aloof” at her younger son's bar mitzvah, going so far as to read a newspaper in the temple while his grandson gave his speech. This was a marked contrast from her first son's bar mitz-vah, at which the defendant "was engaged, singing [and] shedding tears of joy.”

. At Dreyer's change of plea hearing, he informed the court that a doctor had identified frontal lobe damage in his brain. At the time, Dreyer's counsel made no comments regarding the effect of this condition on Dreyer's ability to assist in his defense and the court did not have the benefit of any of these expert reports; all three reports were completed after Dreyer entered his guilty plea.

. A case relied on heavily in the dissent, United States v. White, 670 F.3d 1077 (9th Cir. 2012), is also inapplicable and presents an entirely different issue. In White, the issue presented was whether the district court committed error by failing to order a second competency hearing sua sponte after the court had previously conducting a hearing on the matter and found the defendant to be competent to stand trial. The court in White recognized that, where, as here, a hearing has not previously been held, the proper standard of review “is comprehensive and not limited by either the abuse of discretion or clearly erroneous standard,” and error occurs when the reviewing court determines that the evidence before the trial court "raises a bona fide doubt as to whether the defendant has become incompetent.” White, 670 F.3d at 1082 (internal citations and quotation marks omitted). Where, as in White, a competency hearing has already been conducted and in that hearing the defendant has been found competent, White holds that the standard of review is more deferential and error can be found only if the failure to order a second hearing sua sponte constitutes an abuse of discretion. Id. In Dreyer's case, there was no prior hearing as to his competency, and thus we must conduct, as White reaffirms, a “comprehensive [review] not limited by either the abuse of discretion or clearly erroneous standard.” Id.

. Although Duncan involved the district court's decision not to hold a formal competency hearing despite defense counsel’s motion, on appeal the analysis is the same: “whether a reasonable judge, situated as was the trial judge who denied the motion, should have experienced doubt with respect to the defendant’s competence.” Duncan, 643 F.3d at 1247.